UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD J. KNIGHTEN,

    Plaintiff,

v.                                       Case No. 06-12489
                                       Hon. Sean F. Cox

GENERAL MOTORS CORPORATION,
and UAW LOCAL 598,

    Defendants.

_____

## OPINION AND ORDER

This matter is before the Court on Defendant GM's Motion for summary judgment and Defendant UAW Local 598's Motion for summary judgment. Both parties have briefed the issues. For the following reasons, the Court **GRANTS** both Defendant GM and Defendant UAW Local 598's Motions for summary judgment.

### I. BACKGROUND

This action arises out of Plaintiff, Ronald Knighten's deferral from work pending successful completion of an eye exam, and Defendant UAW Local 598's ("union") alleged failure to fairly represent Plaintiff in his ensuing dispute.

Plaintiff began working for Defendant GM in 1978 as an hourly assembly worker. In 1988, Plaintiff completed training and became a journeyman pipefitter. Plaintiff's job required

him to drive a breakdown rig, a fork truck and man lift in the plant. Because his position required driving within the plant, GM required Plaintiff to have an in-plant driver's license. The in-plant license has to be renewed every three years. Renewal requires successful completion of a physical, including an eye exam, and refresher safety training.

Because compliance with the renewal process was poor, Director of Plant Engineering, Randy Tanner ("Tanner") decided to create a process to ensure compliance. Tanner spoke with, and got concurrence from, Mark Hawkins ("Hawkins"), the Chairman of Local 598's Shop Committee. Tanner distributed a memo on October 11, 2005 detailing the new process. The process required non-compliant employees to be "deferred" from working overtime in the plant until they met the requirements to renew their in-plant license.

On October 19, 2005, Plaintiff was given a physical by GM's plant medical department in order to renew his in-plant license. Plaintiff did not pass the eye exam. Plaintiff suffers from Keratoconus, a progressive disease that causes structural changes in the cornea and requires the use of corrective lenses. Plaintiff was told he could not drive any in-plant vehicles, but he could continue to work overtime since he scheduled an appointment with his eye doctor for November 21, 2005, to address the problem. On November 22, 2005, Plaintiff came to GM's plant medical office with his eye exam form. Plaintiff handed the form to the nurse but would not allow her to copy it, and took the form back. Plaintiff claims he was accused of forging a physician's signature. Because Plaintiff did not successfully complete an eye exam, he was deferred from working overtime.

Subsequently, Plaintiff claims he was told he had to sign a medical authorization to release all of his medical records in order for him to return to overtime. Defendants claim

Plaintiff was told he needed to have his eye doctor speak with the plant doctor, Dr. Wayne Good. Plaintiff refused to sign the authorization. Plaintiff asserts that he was told by his alternate committeeman, Paul Kocsis, that he had done all he needed to do when he returned the medical form to the medical office. On December 3, 2005, Plaintiff met with Hawkins and told him that he would not allow Dr. Good to speak with his eye doctor because Dr. Good was not an eye doctor and would not understand the terminology. Plaintiff contends the union insisted that he sign the medical release form. Plaintiff claims that he asked if Dr. Good could speak to his specialist directly and he was told no.

On December 5, 2005, Plaintiff was asked to meet with a Labor Relations Representative, his supervisor, and several union representatives. Plaintiff was told at the meeting that he was being deferred from working straight time or overtime. Defendants claim the deferral was until the vision issue was resolved. However, Plaintiff claims he was told that the deferral was because he falsified his original medical form and refused to sign the medical release form. Plaintiff claims he was told that this was Hawkins' way of "putting him in his place." Plaintiff further claims that he was told the UAW "didn't want to see him file a grievance when he was told to return to work." Defendant Local 598 did not file a union grievance on Plaintiff's behalf.

Following his deferral, Plaintiff saw his doctor, Dr. Dunn, and had new contact lenses ordered. At some point during his deferral, Plaintiff received a letter, apparently in error, threatening termination if he did not return to work within three days of receiving the letter. On December 24, 2005, Plaintiff brought in a letter from Dr. Dunn dated December 22, 2005, stating that Plaintiff was in the process of being fitted with new contact lenses and that he met all federal and state requirements for a motor vehicle license. The letter also gave test scores from his

November 21, 2005 eye exam. On December 26, 2005, Plaintiff took an eye exam administered by the plant doctor. He did not pass the exam. Plaintiff took the eye exam again on January 3, 2006, but again did not pass. On January 9, 2006, Plaintiff was asked to come in and pass a reading test with Dr. Good. Plaintiff passed the exam and his in-plant license was restored. Plaintiff returned to work that same night, and continues to be employed by Defendant GM. Plaintiff claims he was again told by a union representative that "they do not want to see a grievance."

On March 11, 2006, Plaintiff mailed a Written Request for Appeal to Local 598's recording secretary regarding the union's failure to file a grievance on his behalf over the deferral. A hearing was scheduled. Plaintiff claims he was not notified of the hearing date, and thus did not attend. On April 19, 2006, Plaintiff was notified by letter that his appeal was denied. Plaintiff filed an appeal to the International UAW on April 19, 2006. Filing an appeal with the International UAW is the next step in the appeal procedure. On June 28, 2006, the International UAW sent Plaintiff a letter requesting further information if he wished to continue with his appeal. The International UAW requested the date of his appeal to Local 598, a copy of his appeal, and the name of the person who told Plaintiff that his appeal was heard and denied. Plaintiff claims a similar letter was also sent to the secretary of Local 598 and the President of the Local. No one provided the International UAW with the requested information. Plaintiff also did not complete the final step of the appeal process, an appeal with the Convention Appeal Committee or the Public Review Board.

Meanwhile, on June 2, 2006, Plaintiff filed the instant action alleging a hybrid claim pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.

4

Plaintiff alleges that Defendant GM breached the collective bargaining agreement ("CBA"), and Defendant UAW Local 598 breached its duty of fair representation. On July 6, 2007, both Defendants filed separate Motions for summary judgment. Plaintiff filed a joint Response to both Motions. Defendants argue that Plaintiff failed to exhaust his administrative remedies; cannot establish a breach of the CBA; and cannot establish breach of the duty of fair representation.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III. ANALYSIS

**Plaintiff Did Not Exhaust His Administrative Remedies.**

When bringing a § 301 action, "exhaustion of grievance procedures is mandatory, unless resort to union appeal procedures is demonstrated to be futile." *Ryan v. General Motors*

*Corporation*, 929 F.2d 1105, 1110 (6th Cir. 1989). "[C]ourts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton v. International Union, et al.*, 451 U.S. 679, 690 (1981). The *Clayton* Court went on to state:

> In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Clayton*, 451 U.S. at 690.

Plaintiff argues that the exhaustion requirement should be excused as futile based on his union's hostility. Plaintiff argues in his Response that the union refused to file a grievance on his behalf. Further, he claims he was told by Local 598 members not to file his own grievance. Despite these alleged threats, Plaintiff filed an appeal of the union's decision not to file a grievance on his behalf. However, Plaintiff claims he was not notified of the hearing and his appeal was denied. Following the denial, Plaintiff filed an appeal with the International UAW. Plaintiff was sent a letter requesting additional information regarding his local union appeal. Plaintiff did not send the requested information. He also points out that the president and recording secretary of Defendant Local 598 received the letter and also failed to send the requested information. Plaintiff did not pursue further appeal, choosing to file the instant action.

Even accepting all of these allegations as true, Plaintiff does not demonstrate that exhaustion was futile. In *Monroe v. International Union, UAW, et al.*, 723 F.2d 22, 25 (6th Cir. 1983), the Sixth Circuit held that where an employee demonstrates hostility by the local union,

but does not make out a case of hostility by the International UAW, the employee does not make the requisite showing to excuse the exhaustion requirement. In this case, Plaintiff alleges hostility and attempts to thwart his appeal process by the local union, but he does not establish hostility on the part of the International UAW. Plaintiff does not present any evidence that the International UAW was hostile, only that it requested more information. Moreover, even if Plaintiff did sufficiently establish hostility on the part of the International UAW, his argument still fails because he does not allege hostility by the Public Review Board. See *Wagner v. General Dynamics, et al.*, 905 F.2d 126, 128 (6th Cir. 1990)(where employee fails to establish that cannot get a fair hearing from the Public Review Board, exhaustion is not futile on the basis of hostility). Accordingly, Plaintiff is not entitled to a finding that exhaustion of intra-union appeal procedures would be futile based on hostility.

Plaintiff does not argue that the intra-union appeals procedure would be inadequate to award him the relief he seeks, or that exhaustion would unreasonably delay his ability to obtain a judicial hearing on the merits. Accordingly, Plaintiff fails to establish that exhaustion would have been futile. Thus, Plaintiff failed to exhaust his administrative remedies and his action must be dismissed. Defendants are entitled to summary judgment. The Court does not reach Plaintiff's arguments that Defendant GM breached the CBA, or that Defendant UAW Local 598 breached its duty of fair representation.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** both Defendant GM and Defendant UAW

Local 598's Motions for summary judgment.

**IT IS SO ORDERED.**

> **S/Sean F. Cox**
> **Sean F. Cox**
> **United States District Judge**

**Dated: November 30, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on November 30, 2007, by electronic and/or ordinary mail.**

> **S/Jennifer Hernandez**
> **Case Manager**